UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN CASUALTY COMPANY, | ) | |
| OF READING, PENNSYLVANIA, a | ) | **JURY TRIAL DEMANDED** |
| Pennsylvania corporation, and | ) | |
| CONTINENTAL CASUALTY | ) | |
| COMPANY, an Illinois Corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:13-cv-1200 |
| | ) | |
| vs. | ) | |
| | ) | |
| FORMEDIC COMMUNICATIONS, | ) | |
| LTD, a New Jersey corporation, and | ) | |
| RADHA GEISMANN, M.D., P.C., | ) | |
| a Missouri corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs American Casualty Corporation of Reading, Pennsylvania ("ACCO") and

Continental Casualty Company ("CCC"), foreign companies, seek a declaratory judgment

under 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure for

purposes of determining a question of actual, immediate controversy between the parties.

Plaintiffs respectfully allege as follows:

### I.   NATURE OF ACTION AND RELIEF SOUGHT

1.     This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202

for the purpose of determining the parties' rights and obligations, if any, with regard to ten

insurance policies.

2.     Plaintiffs seek a declaration that they have no duty to defend or indemnify Formedic Communication, Ltd. ("Formedic") with regard to a putative class action lawsuit filed against Formedic, captioned *Radha Geismann, M.C., P.C. v. Formedic Communications, Ltd.,* Case No. 12SL-CC02653, which is pending in the Circuit Court for St. Louis County, Missouri (hereinafter the "Underlying Suit"), and which was filed on July 12, 2012.

3.     Formedic first tendered the Underlying Suit to ACCO and CCC on or about May 2, 2013 and requested a defense and indemnity coverage for the Underlying Suit under the primary liability policies issued by ACCO ("the ACCO Primary Policies") and the commercial umbrella policies issued by CCC ("the CCC Umbrella Policies") to Formedic (hereinafter jointly "the Policies").

4.     ACCO and CCC disclaimed coverage, including any duty to defend Formedic in the Underlying Suit under the Policies.

5.     An actual, immediate controversy exists among the parties regarding whether insurance coverage is afforded under the Policies issued to Formedic for the claims asserted and the alleged damages sought against Formedic in the Underlying Suit.

## II.     THE PARTIES

6.     American Casualty Company of Reading, Pennsylvania ("ACCO") is a corporation organized and existing under the laws of Pennsylvania with its principal place of business in Chicago, Illinois.

7.     Continental Casualty Company ("CCC") is a corporation organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.

2

8.     Formedic Communications Ltd. ("Formedic") is a limited liability corporation, with its principal place of business in New Jersey.  At all relevant times herein, Formedic was authorized to and did business in Missouri.  In the Underlying Suit, Formedic has submitted to the jurisdiction of the Circuit Court for St. Louis County, Missouri.

9.     Radha Geismann, M.D., P.C. ("Geismann") is a professional corporation with its principal place of business in St. Louis County, Missouri.  Because Geismann initiated the Underlying Suit, out of which this action arises, it is a necessary party and is named in this declaratory judgment action so that Geismann will be bound by any judgment rendered herein.

### III.    JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorney's fees and costs.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c) because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this District.

### IV.    THE UNDERLYING SUIT

12.     The Underlying Suit was filed in the Circuit Court of St. Louis County, Missouri on July 12, 2012.  A true and correct copy of the complaint filed in the Underlying Suit (the "Underlying Complaint") is attached as Exhibit A.

13.     The Underlying Suit was filed by Geismann as a putative class action against Formedic and Co-Defendant Raj Singh.

14.     The Underlying Complaint alleges violations of the federal Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227; common law conversion; and violations of the Missouri Consumer Fraud and Deceptive Business Practices Act, Chapter 407 ("the MCFA").  Geismann brings the Underlying Complaint on behalf of itself and as a putative class action on behalf of "all others similarly situated."  Ex. A., ¶ 4.

15.     The Underlying Complaint alleges that on or about July 2008 and April 7, 2009, Formedic, and/or Co-Defendant Raj Singh, sent two unsolicited facsimiles to Geismann in St. Louis County, Missouri.  Copies of these alleged facsimiles are attached as Exs. 1 and 2 to the Underlying Complaint.  *See* Ex. A., ¶ 10.; Exs. 1 and 2 to Ex. A.

16.     The Underlying Complaint alleges that Formedic's  "transmissions of Exhibits 1-2" did not "contain a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements"; did not "contain a notice that states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine"; and did not "contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3)."  Ex. A., ¶¶ 16-19.

17.      The Underlying Complaint alleges that Geismann "had not invited or given permission to [Formedic or Singh] to send fax advertisements"; that Geismann "did not have an established business relationship with [Formedic or Singh]"; and that "[Formedic and Singh] sent multiple, unsolicited facsimiles to [Geismann] and other members of the

proposed classes throughout the time period covered by the class definitions." Ex. A., ¶¶ 21-23.

18.     The Underlying Complaint alleges that the transmission of the faxed advertisements, attached as Exhibits 1-2, caused the destruction of Geismann's property.  Ex. A., ¶ 29.

19.     Count I of the Underlying Complaint alleges that Formedic's alleged transmission of the unsolicited advertisements, including Exhibits 1-2, violated the TCPA. Ex. A., ¶¶ 33-47.

20.     In Count I, Geismann purports to bring suit on behalf of itself and on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants (3) with respect to whom Defendants cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendants did not have an established business relationship and (5) which did not display a proper opt out notice.

Ex. A, ¶ 33.

21.     Count II of the Underlying Complaint alleges common law conversion.  In this Count, Geismann alleges that as a result of Formedic's transmission of the unsolicited faxed advertisements, Formedic "improperly and unlawfully converted [the underlying plaintiff's and putative class members'] fax machines, toner and paper to their own use" and "converted the [underlying plaintiff's and putative class members'] time to [Formedic's own use."  Ex. A, ¶ 53.

22.     In Count II, Geismann purports to bring suit on behalf of itself and on behalf of the following class of persons:

> All persons who on or after five years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendants with respect to whom Defendants cannot provide evidence of prior express permission or invitation.

Ex. A, ¶ 49.

23.     Count III of the Underlying Complaint alleges that Formedic's alleged transmission of the unsolicited advertisements violated the Missouri Consumer Fraud and Deceptive Business Practices Act ("the MCFA").   Geismann alleges that Formedic's unauthorized transmission of the faxed advertisements was an "unfair practice," which violated public policy and forced Geismann and other class members to incur expense without any consideration in return, including the "loss of paper, toner, ink, use of their facsimile machines, and use of their employee's time."  Ex. A, ¶¶ 61-68.

24.     In Count III, Geismann purports to bring suit on behalf of itself and on behalf of the following class of persons:

> All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendants with respect to whom Defendants cannot provide evidence of prior express permission or invitation.

Ex. A, ¶ 61.

25.     The Underlying Complaint alleged that the Plaintiff Class consists of over 40 persons in Missouri and throughout the United States.

26.     In the Underlying Suit, Geismann seeks statutory damages, treble damages, damages for the underlying defendants' alleged conversion, an injunction prohibiting future statutory violations, attorneys fees and costs, all costs and expenses incurred by Geismann in prosecuting the Underlying Suit, pre-judgment and post-judgment interest, and "such further relief as the Court may deem just and proper."  Ex. A., pp. 11, 14, 17.

## V.     THE POLICIES

### A.     The ACCO Primary Policies

27.     ACCO issued primary commercial general liability coverage to Formedic under policy number B 1023449093 for five policy periods:  from January 1, 2007 to January 1, 2008 (the "ACCO 07-08 policy"); from January 1, 2008 to January 1, 2009 policy (the "ACCO 08-09 policy"); from January 1, 2009 to January 1, 2010 (the "ACCO 09-10 policy"); from January 1, 2010 to January 1, 2011 (the "ACCO 10-11 policy"); and from January 1, 2011 to March 30, 2011 (cancelled early) (the "ACCO 1/11 to 3/11 policy") (jointly referred to as "the ACCO Primary Policies").  True and correct copies of the ACCO Primary Policies are attached hereto, respectively, as Exhibits B, C, D, E and F.

28.     The ACCO Primary Policies provide Business Liability Coverage for "bodily injury," "property damage," and "personal and advertising injury" as follows:

### A.     Coverages

#### 1.   Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury)

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and

advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury," to which this insurance does not apply.  We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in Section **D** – Liability And Medical Expenses Limits Of Insurance; and

(2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension – Supplementary Payments.

**b.**  This insurance applies:

(1)  To "bodily injury" and "property damage" only if:

(a)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b)  The "bodily injury" or "property damage" occurs during the policy period; and

(c)  Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2)  To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period . . .

See Ex. B, C (Form No. SB-300000-A, pg. 1); Ex. D, E (Form No. SB-300000-B, pg 1) and Ex.

F (Form No. SB-300000-C, pg 1).

29.    The ACCO Primary Policies in effect for annual, successive policy periods

from January 1, 2007 to January 1, 2011 define "bodily injury" as:

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

See Ex. B, C (Form No. SB-300000-A, pg. 12); Ex. D, E (Form No. SB-300000-B, pg 12).

30.    The ACCO 1/11 - 3/11 Policy contains the following modified definition of

"bodily injury:"

Section F. Liability and Medical Expenses Definitions, item 3. "Bodily Injury" is deleted and replaced with the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.

See Ex. F., Form No. SB-146932-D, pg. 4.

31.    The ACCO Primary Policies define "occurrence" as:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

See Ex. B, C (Form No. SB-300000-A, pg. 14); Ex. D, E (Form No. SB-300000-B, pg 14); and

Ex. F (Form No. SB-300000-C, pg. 14).

32.      The ACCO Primary Policies define "personal and advertising injury" as:

9

14.  "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    **a.**  False arrest, detention or imprisonment;

    **b.**  Malicious prosecution;

    **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**  The use of another's advertising idea in your "advertisement"; or

    **g.**   Infringing upon another's copyright, trade dress or slogan in your "advertisement."

See Ex. B, C (Form No. SB-300000-A, pg. 14); Ex. D, E (Form No. SB-300000-B, pg 14); and

Ex. F (Form No. SB-300000-C pp. 14-15).

33.    The ACCO Primary Policies define "property damage" as:

17.  "Property damage" means:

    **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

See Ex. B, C (Form No. SB-300000-A, pg. 15); Ex. D, E (Form No. SB-300000-B, pg 15); and Ex. F (Form No. SB-300000-C pg. 15).

34.     The ACCO Primary Policies contain the following exclusions applicable to the Business Liability Coverage.  The policy provides that "[t]his insurance does not apply to:"

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*  *  *

**p.  Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

* * *

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period . . ."

See Ex. B, C (Form No. SB-300000-A, pp. 3, 7); Ex. D, E (Form No. SB-300000-B, pp. 3, 7); and Ex. F (Form No. SB-300000-C pp. 3, 7).

35.     The ACCO Primary Policies in effect for annual, successive policy periods from January 1, 2007 to January 1, 2011[1] contain an exclusion, titled "Violation of Statutes that Govern Email, Fax, Phone Call or Other Methods of Sending Material or Information" (hereinafter the "Violation of Statutes/Fax Exclusion"), which applies to the policies' "bodily injury," "property damage," and "personal and advertising injury" liability coverage.

36.     The "Violation of Statutes/ Fax Exclusion" provides in relevant part that:

**A.** The following exclusion is added to Section **B.** EXCLUSIONS of the Businessowners Liability Coverage Form:

**q.** This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Section **B.** EXCLUSIONS, Paragraph **p.** Personal and Advertising Injury:

**(15)** This Insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

---

[1] This includes the ACCO 07-08 policy, the ACCO 08-09 policy, the ACCO 09-10 policy and the ACCO 10-11 policy.

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

See Ex. B, C, D, and E (Form No. SB-147078-A).

37.     The ACCO 1/11 – 3/11 Policy contains the "Recording and Distribution of Material or Information in Violation of Law Exclusion" (hereinafter the "Violation of Law/Fax Exclusion"), which applies to the policy's "bodily injury," "property damage," and "personal and advertising injury" liability coverage.  The "Violation of Laws/ Fax Exclusion" provides in relevant part that:

**A.** The following exclusion is added to Section **B.** EXCLUSIONS of the Businessowners Liability Coverage Form:

**2.  Exclusions**

This insurance does not apply to:

**q.  Recording and Distribution of Material Or Information in Violation of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Section **B.** EXCLUSIONS, Paragraph **p.** Personal and Advertising Injury:

### 2.  Exclusions

This Insurance does not apply to:

### (15) Recording and Distribution of Material Or Information In Violation of Law

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3)  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

14

See Ex. F, Form No. SB-300849-A.

38.     Under Section E., titled "Businessowners Liability Conditions," the ACCO

Primary Policies contain the following notice condition:

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**  If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.**  You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

See Ex. B, C (Form No. SB-300000-A, pp. 11-12); Ex. D, E (Form No. SB-300000-B, pp. 11-12); and Ex. F (Form No. SB-300000-C, pg. 12).

**B.    The Umbrella Policies**

39.    CCC issued five Commercial Umbrella Plus policies to Formedic under policy no. B 2086878546 for annual, successive policy periods from January 1, 2007 to March 30, 2011 (cancelled early) (hereinafter the CCC Umbrella Policies).  True and accurate copies of the CCC Umbrella Policies are attached hereto as Exhibits G, H, I, J and K.

40.    The CCC Umbrella Policies contain the following insuring agreement, in which CCC agrees to provide umbrella coverage for "bodily injury," "property damage," and "personal and advertising injury" as follows:

**SECTION I – COVERAGES**

**1.  Insuring Agreement**

We will pay on behalf of the insured those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.

**a.**  This insurance applies to "bodily injury" and "property damage" only if:

**(1)**  The "bodily injury" or "property damage" is caused by an "incident" anywhere in the world;

16

**(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**   With respect to "bodily injury" or "property damage" that continues, changes or resumes so as to occur during more than one policy period, both of the following conditions are met:

**(i)**   Prior to the policy period, no "authorized insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part; and

**(ii)**   During the policy period, an "authorized insured" first knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

For purposes of this Paragraph **(1) a.(3)** only, if **(a)** "bodily injury" or "property damage" that occurs during this policy period does not continue, change or resume after the termination of this policy period; and **(b)** no "authorized insured" first knows of this "bodily injury" or "property damage" until after the termination of this policy period, then such first knowledge will be deemed to be during this policy period.

*   *   *

**d.**   This insurance applies to "personal and advertising injury" caused by an "incident" committed anywhere in the world during the policy period.

See Ex. G, H, I, J, K (Form No. G-15057-C, pg. 1).

41.   The CCC Umbrella Policies define "bodily injury" as:

**3.**   **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.

See Ex. G, H, I, J, K (Form No. G-15057-C, pg. 11).

42.   The CCC Umbrella Policies define "incident" as:

**9.**   **"Incident"**

**a.**   With respect to "bodily injury" and "property damage," "incident" means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**b.**   With respect to "personal and advertising injury," "incident" means an offense arising out of your business.

See Ex. G, H, I, J, K (Form No. G-15057-C, pg. 12).

43.     The CCC Umbrella Policies define "Personal and Advertising Injury" as:

**10. "Personal and Advertising Injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.**  False arrest, detention or imprisonment;

**b.**  Malicious prosecution or abuse of process;

**c.**  Wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

**d.**  Discrimination, unless such insurance is prohibited by law;

**e.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**f.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;

**g.**  The use of another's advertising idea in your "advertisement";

**h.**   Infringing upon another's copyright, trade dress or slogan in your "advertisement."

See Ex. G, H, I, J, K (Form No. G-15057-C, pg. 12).

44.     The CCC Umbrella Policies define "property damage" as:

**12. "Property damage"** means:

**a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**   Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

See Ex. G, H, I, J, K (Form No. G-15057-C, pg. 13).

45.     The CCC Umbrella Policies define "retained limit," "scheduled underlying insurance," "ultimate net loss," "underlying insurer," and "unscheduled underlying insurance" as follows:

**16.** **"Retained limit"** means the amount stated as such in the Declarations. The "retained limit" is retained and payable by the insured as respects all "incidents" not covered by "scheduled underlying insurance" or by "unscheduled underlying insurance."

**17.** **"Scheduled underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance including renewal or replacement of such contracts which are not more restrictive than those listed in the aforementioned Schedule of Underlying Insurance.

**18.** **"Ultimate net loss"**

**a.** "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:

**(1)** Final adjudication on the merits; or

**(2)** Through compromise settlement with our written consent or direction;

because of "incident(s)" covered by this policy.

However, it includes the above mentioned sums only after deducting all other recoveries and salvages.

**b.** "Ultimate net loss" does not include the following:

**(1)** Costs or expenses related to:

**(a)** Litigation;

19

**(b)** Settlement;

**(c)** Adjustment; or

**(d)** Appeals;

nor costs or expenses incident to the same which an "underlying insurer" has paid, incurred or is obligated to pay to or on behalf of the insured;

**(2)** Pre-judgment interest;

**(3)** Office costs and expenses and salaries and expenses of the employees of an insured;

**(4)** Our office costs and expenses and salaries of our employees; or

**(5)** General retainer and/or monitoring fees of counsel retained by the insured.

19. **"Underlying insurer"** means an insurer whose policy covers "bodily injury," "property damage" or "personal and advertising injury" also covered by this policy but does not include insurers whose policies were purchased specifically to be in excess of this policy.  It includes all insurers providing:

**a.** "Unscheduled underlying insurance"; and

**b.** "Scheduled underlying insurance."

20. **"Unscheduled underlying insurance"**

**a.** "Unscheduled underlying insurance" means insurance policies available to an insured, whether:

**(1)** Primary;

**(2)** Excess;

**(3)** Excess-contingent; or

**(4)** Otherwise;

except the policies listed in the Schedule of Underlying Insurance.

    **b.**  "Unscheduled underlying insurance" does not include insurance purchased specifically to be excess of this policy.

See Ex. G, H, I, J, K (Form No. G-15057-C, pp. 13-14).

    46.    The CCC Umbrella Policies contain the following exclusions applicable to the Commercial Umbrella Plus coverage.   The CCC Umbrella Policies provide that "[t]his insurance does not apply to:"

    **a. Expected or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.  This exclusion does not apply to Employers Liability claims for "bodily injury" covered by "scheduled underlying insurance."

    \*  \*  \*

    **c. "Personal and advertising injury" Exclusions**

    "Personal and advertising injury":

    **(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

    \* \* \*

    **(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period . . .

See Ex. G, H, I, J, K (Form No. G-15057-C, pp. 1, 2).

47.     The CCC Umbrella Policies contain the following "Do Not Call" exclusion, which applies to the Policies' "bodily injury," "property damage" and "personal and advertising injury liability" coverage.   This exclusion (hereinafter, the "Do Not Call" exclusion) provides that "[t]his insurance does not apply to:"

**bb. Do Not Call**

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2)  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3)  Any statute, ordinance or regulation, other than the TCPA or the CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

See Ex. G, H, I, H, K (Form No. G-15057-C, pg. 6).

48.     Under Section IV – Condition, the CCC umbrella policies also contain the following notice condition:

**2.  Duties of the Insured**

**a.**  In the event of an "incident" which has not resulted in a claim or suit.

Whenever you have information of an "incident" which involves injuries or damages likely to involve this policy, written notice shall be given by or for you to us or to our authorized agent as soon as practicable.  The notice shall contain:

(1)  Particular information sufficient to identify the insured;

22

(2)  Such information as can be reasonably obtained with respect to time, place and circumstances of the occurrence or offense; and

(3)  Names and addresses of the insured and of available witnesses.

**b.**  In the Event of Claims or Suit

You shall provide us with written notice as soon as practicable whenever:

(1)  A claim is made or "suit" is brought against you;

(2)  You receive notice that a right to bring claim or "suit" against you will be asserted; or

(3)  You obtain information that the obligation of "underlying insurers" to:

(a)  Investigate;
(b)  Defend;
(c)  Pay on behalf of; or
(d)  Indemnify

you has ceased.

Every demand, notice, summons, amended complaint or other process received by you or your representative shall be forwarded with each notice.

See Ex. G, H, I, J, and K (Form G-15057-C, pp. 8-9).

49.    In addition to the foregoing provisions, ACCO and CCC plead all other conditions, terms, warranties, limits, definitions and exclusions of the ACCO Primary and CCC Umbrella Policies that may also be found to be applicable, as ACCO's and CCC's investigation

of this matter continues, and they reserve the right to further amend their Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

## VI.    ADDITIONAL RELEVANT FACTS

50.    Formedic, through its counsel, the Law Office of William R. Connelly, LLC, first sent the Underlying Complaint to Bollinger Insurance Solutions by letter dated May 2, 2013, requesting that Bollinger tender the complaint to "CNA Insurance Company."

51.    ACCO and CCC, "the CNA Insurers," received the Underlying Complaint after May 2, 2013.  ACCO and CCC reviewed the Underlying Complaint and issued a coverage position letter to Formedic dated June 18, 2013.  ACCO and CCC disclaimed coverage for the Underlying Suit, including any duty to defend Formedic in that action.

## COUNT I

### FOR DECLARATORY JUDGMENT THAT ACCO DOES NOT OWE A DUTY TO DEFEND

52.    ACCO hereby incorporates and re-alleges the allegations in paragraphs 1-51 above as if fully set forth herein.

53.    ACCO does not owe a duty to defend Formedic in the Underlying Suit under the ACCO Primary Policies for the following reasons:

a.    The Underlying Suit does not allege "bodily injury."

b.    The Underlying Suit does not allege "property damage."

c.    The Underlying Suit does not allege "personal and advertising injury."

d.  Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence."

e.  Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence" during the primary policy periods.

f.  Even if the Underlying Suit were to seek damages for "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "offense" during the primary policy periods.

g.  Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, the "Expected or Intended Injury" exclusion bars coverage.

h.  Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "occurrence" during the primary policy periods, which it does not, the "Violation of Statutes/Fax Exclusion" contained in the ACCO 07-08 policy, the ACCO 08-09 policy, the ACCO 09-10 policy, and the ACCO 10-11 policy, bars coverage.

i.  Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "occurrence" during the primary policy periods, which it does not, the "Violation of Law/Fax Exclusion" contained in the ACCO 1/11-3/11 policy, bars coverage.

j.  Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the "Violation of Statutes/Fax Exclusion" contained in the ACCO 07-08 policy, the ACCO 08-09 policy, the ACCO 09-10 policy, and the ACCO 10-11 policy, bars coverage.

k.  Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the "Violation of Law/Fax Exclusion" contained in the ACCO 1/11-3/11 policy, bars coverage.

l.  Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the ACCO Primary Policies exclude coverage for "personal

and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

m.    Even if the Underlying Suit alleged "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the Primary Policies exclude coverage for "personal and advertising injury" "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

n.    Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the Primary Policy periods, which it does not, the "personal and advertising injury" coverage's "invasion of privacy" offense applies to "a person's right of privacy," and not to privacy violations purportedly asserted on behalf of a professional corporation, such as Geismann, M.D., P.C., as corporations do not have privacy rights.

o.    Coverage may be barred on grounds that ACCO did not receive notice of the underlying claim or suit as "soon as practicable" as required by the ACCO Primary Policies.

p.    The statutory damages awarded under the TCPA are punitive and/or penal damages and are not damages covered by a general liability policy as a matter of law and public policy.

q.    Claims for injunctive relief do not seek "damages" as that term is used in the ACCO Primary Policies.

54.    Upon information and belief, Formedic disagrees with ACCO's coverage position and maintains that ACCO owes a duty to defend Formedic in the Underlying Suit. Thus, an actual and immediate controversy exists among the parties.

55.    Pursuant to 28 U.S.C. §§ 2201 and 2202, ACCO seeks a judicial determination that it has no duty to defend Formedic in the Underlying Suit under the ACCO Primary Policies.

## COUNT II

### FOR DECLARATORY JUDGMENT THAT ACCO DOES NOT OWE
### A DUTY TO INDEMNIFY

56.     ACCO hereby incorporates and re-alleges the allegations in paragraphs 1-55 above as if fully set forth herein.

57.     ACCO does not owe a duty to indemnify Formedic for any judgment or settlement awarded against it in the Underlying Suit under the ACCO Primary Policies for the following reasons:

a.      The Underlying Suit does not allege a "bodily injury."

b.      The Underlying Suit does not allege "property damages."

c.      The Underlying Suit does not allege "personal and advertising injury."

d.      Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence."

e.      Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence" during the primary policy periods.

f.      Even if the Underlying Suit were to seek damages for "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by "offense" during the primary policy periods.

g.      Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, the "Expected or Intended Injury" exclusion bars coverage.

h.      Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "occurrence" during the primary policy periods, which it does not, the "Violation of Statutes/Fax Exclusion" contained in the

ACCO 07-08 policy, the ACCO 08-09 policy, the ACCO 09-10 policy and the ACCO 10-11 policy, bars coverage.

i.    Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "occurrence" during the primary policy periods, which it does not, the "Violation of Law/Fax Exclusion" contained in the ACCO 1/11-3/11 policy, bars coverage.

j.    Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the "Violation of Statutes/Fax Exclusion" contained in the ACCO 07-08 policy, the ACCO 08-09 policy, the ACCO 09-10 policy and the ACCO 10-11 policy, bars coverage.

k.    Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the "Violation of Law/Fax Exclusion" contained in the ACCO 1/11-3/11 policy bars coverage.

l.    Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the ACCO Primary Policies exclude coverage for "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

m.    Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the ACCO Primary Policies exclude coverage for "personal and advertising injury" "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

n.    Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an offense committed during the primary policy periods, which it does not, the ACCO Primary Policies' "personal and advertising injury" coverage's "invasion of privacy" offense applies to "a person's right of privacy," and not to privacy violations purportedly asserted on behalf of a professional corporation, such as Geismann, M.D., P.C., as corporations do not have privacy rights.

o.  Coverage may be barred on grounds that ACCO did not receive notice of the underlying claim or suit as "soon as practicable" as required by the ACCO Primary Policies.

p.  The statutory damages awarded under the TCPA are punitive and/or penal damages and are not damages covered by a general liability policy as a matter of law and public policy.

q.  Claims for injunctive relief do not seek "damages" as that term is used in the ACCO Primary Policies.

58.  Upon information and belief, Formedic disagrees with ACCO's coverage position and maintains that ACCO owes a duty to indemnify Formedic in the Underlying Suit. Thus, an actual and immediate controversy exists among the parties.

59.  Pursuant to 28 U.S.C. §§ 2201 and 2202, ACCO seeks a determination that it has no duty to indemnify Formedic under the ACCO Primary Policies for any judgment or settlement which may be awarded against Formedic in the Underlying Suit.

## COUNT III

### FOR DECLARATORY JUDGMENT THAT CCC
### DOES NOT OWE A DUTY TO DEFEND

60.  CCC hereby incorporates and re-alleges the allegations in paragraphs 1-59 above as if fully set forth herein.

61.  CCC does not owe a duty to defend Formedic in the Underlying Suit under the Umbrella Policies for the following reasons:

a.  The Underlying Suit does not allege "bodily injury."

b.  The Underlying Suit does not allege "property damage."

c.  The Underlying Suit does not allege "personal and advertising injury."

29

d.  Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "incident."

e.  Even if the Underlying Suit were to seek damages for "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by an "incident."

f.  Even if the Underlying Suit were to seek damages for "bodily injury," "property damage," or "personal and advertising injury, which it does not, any alleged "bodily injury," "property damage" or "personal and advertising injury" was not caused by an "incident" during the CCC Umbrella Policy periods.

g.  Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, the "Expected or Intended Injury" exclusion bars coverage.

h.  Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "incident" during the CCC Umbrella Policy periods, which it does not, the "Do Not Call" exclusion bars coverage.

i.  Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" during the CCC Umbrella Policy periods, which it does not, the "Do Not Call" exclusion bars coverage.

j.  Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy periods, which it does not, the CCC Umbrella Policies exclude coverage for "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

k.  Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy periods, which it does not, the CCC Umbrella Policies exclude coverage for "personal and advertising injury" "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

l.  Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy

periods, which it does not, the "personal and advertising injury" coverage's "invasion of privacy" offense pertains to "a person's right of privacy," and not to privacy violations purportedly asserted on behalf of a professional corporation, such as Geismann, M.D., P.C., as corporations do not have privacy rights.

m.  Coverage may be barred on grounds that CCC did not receive notice of the underlying claim or suit as "soon as practicable" as required by the CCC Umbrella Policies.

n.  The statutory damages awarded under the TCPA are punitive damages and are not damages covered by a general liability policy as a matter of law and public policy.

o.  Claims for injunctive relief do not seek "damages" as that term is used in the CCC Umbrella Policies.

62.  Upon information and belief, Formedic disagrees with CCC's coverage position and maintains that CCC owes a duty to defend Formedic in the Underlying Suit.  Thus, an actual and immediate controversy exists among the parties.

63.  Pursuant to 28 U.S.C. §§ 2201 and 2202, CCC seeks a judicial determination that it has no duty to defend Formedic in the Underlying Suit under the CCC Umbrella Policies.

## COUNT IV

### FOR DECLARATORY JUDGMENT THAT CCC
### DOES NOT OWE A DUTY TO INDEMNIFY

64.  CCC hereby incorporates and re-alleges the allegations in paragraphs 1-63 above as if fully set forth herein.

65.  CCC does not owe a duty to indemnify Formedic for any judgment or settlement awarded against it in the Underlying Suit under the Umbrella Policies for the following reasons:

a.  The Underlying Suit does not allege "bodily injury."

31

b. The Underlying Suit does not allege "property damage."

c. The Underlying Suit does not allege "personal and advertising injury."

d. Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "incident."

e. Even if the Underlying Suit were to seek damages for "personal and advertising injury," which it does not, any alleged "personal and advertising injury" was not caused by an "incident."

f. Even if the Underlying Suit were to seek damages for "bodily injury," "property damage," or "personal and advertising injury," which it does not, any alleged "bodily injury," "property damage," or "personal and advertising injury" was not caused by an "incident" during the CCC Umbrella Policy periods.

g. Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage," which it does not, the "Expected or Intended Injury" exclusion bars coverage.

h. Even if the Underlying Suit were to seek damages for "bodily injury" or "property damage" caused by an "incident" during the CCC Umbrella Policy periods, which it does not, the "Do Not Call" exclusion bars coverage.

i. Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy periods, which it does not, the "Do Not Call" exclusion bars coverage.

j. Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy periods, which it does not, the CCC Umbrella Policies exclude coverage for "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

k. Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy periods, which it does not, the CCC Umbrella Policies exclude coverage for "personal and advertising injury" "[c]aused by or at the direction of the insured

with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

l. Even if the Underlying Suit were to seek damages for "personal and advertising injury" caused by an "incident" committed during the CCC Umbrella Policy periods, which it does not, the "personal and advertising injury" coverage's "invasion of privacy" offense pertains to "a person's right of privacy," and not to privacy violations purportedly asserted on behalf of professional corporations, such as Geismann, M.D., P.C., as corporations do not have privacy rights.

m. Coverage may be barred on grounds that CCC did not receive notice of the underlying claim or suit as "soon as practicable" as required by the CCC Umbrella Policies.

n. The statutory damages awarded under the TCPA are punitive and/or penal damages and are not damages covered by a general liability policy as a matter of law and public policy.

o. Claims for injunctive relief do not seek "damages" as that term is used in the CCC Umbrella Policies.

66. Upon information and belief, Formedic disagrees with CCC's coverage position and maintains that CCC owes a duty to indemnify Formedic in the Underlying Suit.  Thus, an actual and immediate controversy exists among the parties.

67. Pursuant to 28 U.S.C. §§ 2201 and 2202, CCC seeks a judicial determination that it has no duty to indemnify Formedic under the CCC Umbrella Policies with respect to the Underlying Suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs American Casualty Company of Reading, Pennsylvania (ACCO) and Continental Casualty Company (CCC) respectfully pray for judgment against Formedic Communications, Ltd. and Geismann LLC, as follows:

a.  Declaring that ACCO has no duty to defend Formedic in the Underlying Suit;

b.  Declaring that ACCO has no duty to indemnify Formedic in the Underlying Suit;

c.  Declaring that CCC has no duty to defend Formedic in the Underlying Suit;

d.  Declaring that CCC has no duty to indemnify Formedic in the Underlying Suit;

e.  Awarding ACCO and CCC their costs for this suit; and

f.  Awarding ACCO and CCC such other and further relief as this Court deems just.

Dated:  June 25, 2013.

Respectfully submitted,

/s/ T. Michael Ward

T. Michael Ward #32816MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, Missouri  63101
(314) 421-3400
(314) 421-3128 -- Facsimile
mward@bjpc.com

and

Katherine Streicher Arnold
(Admission Pro Hac Vice Pending)
Jonathan L. Schwartz
(Admission Pro Hac Vice Pending)
COLLIAU CARLUCCIO KEENER MORROW
PETERSON & PARSONS
333 South Wabash Ave, 25th Floor
Chicago IL  60604
(312) 822-6306
(312) 817-2486 -- Facsimile
Katherine.Arnold@cna.com
Jonathan.Schwartz@cna.com

Attorney for Plaintiffs American Casualty
Insurance Company of Reading Pennsylvania
and Continental Casualty Company